IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION



FILED
JAN 2 2 2018
Clerk, U.S. District Court
District Of Montana
Billings

| | |
|---|---|
| ALEXANDRA ARMITAGE,<br><br>Plaintiff,<br><br>vs.<br><br>CALIBER HOME LOANS INC., LSF9 MASTER PARTICIPATION TRUST, BANK OF AMERICA, NA and FIRST AMERICAN TITLE COMPANY OF MONTANA, INC., as Trustee,<br><br>Defendants. | CV 16-27-BLG-SPW<br><br>OPINION AND ORDER |

Before the Court are Defendants Caliber Home Loans and LSF9 Master Participation Trust's Motion for Summary Judgment (Doc. 22), Defendant Bank of America, N.A.'s Motion for Summary Judgment and Alternative Motion for Judgment on the Pleadings, (Doc. 30), and Plaintiff Alexandra Armitage's cross Motion for Summary Judgment Vacating the State Court Default Judgment. (Doc. 34). For the foregoing reasons, the Court GRANTS Defendants' motions and DENIES Armitage's motion.

I.  **Undisputed facts**

In early July 2007, Plaintiff Alexandra Armitage obtained a loan from Mann Mortgage, LLC, in the amount of $189,000, to purchase a house in Red Lodge,

1

Montana, ("the Property"). (Doc. 26 at ¶ 2). In order to get the loan, Armitage executed a Note in favor of Mann Mortgage, LLC, which was secured by a Deed of Trust on the Property. The Deed of Trust designated Mortgage Electronic Registration System, Inc., ("MERS") as the nominee beneficiary for the Lender.[1] (*Id*). Countrywide Homes Servicing took over as the loan servicer later that month. (Doc. 45 at ¶ 3).

Armitage began renting out the house in 2008. (Doc. 26 at ¶ 4). By March 2008, she had defaulted on the loan repayment terms. (*Id.* at ¶ 5). Countrywide sent Armitage a letter in April 2008 regarding the default. (*Id.* at ¶ 6).

By December 2009, Armitage had failed to cure the default on her loan. As a result, on December 4, 2009, an Assignment of Deed of Trust was recorded in the official records of Carbon County, Montana, noticing the public that MERS assigned the Deed of Trust to the Property to Countrywide. (Doc. 25-1 at 24). The same day, a Substitution of Trustee was also recorded against the property, substituting ReconTrust Company, N.A. for Countrywide as the Trustee, and a

---

[1] MERS is an electronic database operated by MERSCORP, Inc., created to track transfers of "beneficial interests" in home loans, and to track changes in loan servicers. *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1038 (9th Cir. 2011). MERS was created to avoid the cumbersome process of recording multiple transfers of the deed of trust with the county by designating MERS as the nominal record holder of the deed of trust on behalf of the original lender and any subsequent lender, thereby requiring the deed of trust to only be recorded once. *Id.* at 1039. *See also Whipple v. Mann Mortg., LLC.* 2014 WL 1404901 at *7 (D. Mont. April 10, 2014).

2

Notice of Trustee's Sale to occur on April 19, 2010, was recorded in the official records of Carbon County. (Doc. 25-1 at 28).

On April 19, 2010, ReconTrust, as substitute trustee, sold the property at a foreclosure sale to the Federal National Mortgage Association. (Doc. 25-1 at 28). A Trustee's Deed Upon Sale and an Assignment of Deed of Trust were recorded on April 26, 2010, noticing the public that ReconTrust assigned the Deed of Trust to the Federal National Mortgage Association. (*Id.* at 31-37). Almost two years later, on January 31, 2012, Federal National Mortgage Association assigned the Deed of Trust to defendant Bank of America, and another Assignment of Deed of Trust was recorded in Carbon County. (*Id.* at 38-39).

At some point after the April 19, 2010, sale, Bank of America learned that the April 19, 2010, Trustee's Sale and Deed were invalid due to ReconTrust's failure to record the Notice of Trustee's Sale with the Affidavit of Mailing prior to the sale, as required under Montana law. (Doc. 32-9 at 5). Accordingly, on March 22, 2012, Bank of America sued Armitage to rescind the Trustee's Deed, vacate the 2010 foreclosure sale, and reinstate Bank of America's lien upon the property. (*Id.*; Doc. 32 at ¶ 9). After attempting to find Armitage in the state, Bank of America moved the state district court to allow service by publication. The state district court granted Bank of America's motion and Armitage was served by publication, but never appeared in the lawsuit. (Doc. 32-8 at 1). The state district

3

court entered default judgment against Armitage on October 12, 2012. (Doc. 32 at ¶17). As a result of the default judgment, the 2010 foreclosure sale was rescinded, Armitage was reinstated as owner of the Property, and Bank of America held the lien on the Property. (*Id.*).

Knowing default judgment had been entered against her, Armitage resumed leasing the property in 2013. (Doc. 46 at ¶¶ 14-15). She received rental payments and work in exchange for leasing the property. (*Id.* at ¶ 16). In May 2013, Armitage submitted a loan modification application to Bank of America. (*Id.* at ¶ 17). Bank of America denied the loan modification and the loan remained in default. (*Id.* at ¶ 18).

Over a year later, on November 16, 2014, Caliber Home Loans, Inc., took over servicing the loan from Bank of America. (Doc. 26 at ¶ 20). On November 17, 2014, Caliber notified Armitage via regular mail that Caliber was the new loan servicer and LSF9 Master Participation Trust was the new loan owner. (Doc. 24-1 at 9, 14). The loan remained in default and due. (Doc. 24 at ¶ 9). Twice in December 2014, Caliber sent Armitage default letters, advising her that the loan remained in default and that if she did not cure her default, her entire loan could become due, foreclosure by judicial proceeding could occur, and her property could be sold. (Doc. 23-1 at 15-21).

From January to May 2015, Caliber tried to contact Armitage on the number she listed on her loan modification application, but did not reach her. (Doc. 24 at ¶¶ 12-13). While Armitage disputes receiving any calls, she admits that she probably gave her telephone number to Caliber and Bank of America. (Doc. 46 at ¶ 27). Throughout this period, Armitage continued renting the property for $850.00 per month. (Doc. 26 at ¶ 26).

On April 8, 2015, Bank of America assigned the Deed of Trust to LSF9 and recorded an Assignment of Deed of Trust in the official records of Carbon County. (Doc. 26 at ¶ 27). On September 8, 2015, First American Title Company of Montana, Inc., was substituted as Trustee under the Deed of Trust. A Substitution of Trustee was recorded in Carbon County. (Doc. 25-1 at 48). Because Armitage had yet to cure the default on the loan, a Notice of Trustee's Sale was recorded in Carbon County on September 11, 2015. (Doc. 25-1 at 57-59). The unpaid principal of the loan is $188,101.93. (*Id.* at 58). The Trustee's sale was cancelled and Cancellation of the Notice of Trustee's Sale was recorded on September 22, 2015. (*Id.* at 60).

Armitage filed a complaint in state court in November 2015, challenging the foreclosure and seeking money damages. (Doc. 3). LSF9 removed the case to federal court as a diversity action. (Doc. 1). In her Amended Complaint, Armitage advances the following claims against the Defendants under federal and state law:

5

1. *Breach of the Trust Indenture and Damages for Wrongful Exercise of Power of Sale and Attempted Wrongful Exercise of Power of Sale (Count I):* Armitage alleges that because the default judgment and the deed transfers were illegal, Defendants attempted sale of the Property violated the Trust Indenture and the Small Tract Financing Act. She argues that because it didn't own the property, Bank of America's demands for payment in January 2013, breached the Deed of Trust. (Doc. 32-5 at 13).

2. *Violation of the Fair Debt Collection Practices Act (Count II)*: Armitage alleges that because the 2010 sale was invalid, Bank of America's requests for accumulated costs, fees, interest, principal, and other charges, constituted demands for debts Armitage did not owe and constitute unfair and deceptive debt collection practices. (Doc. 32-5 at 13).

3. *Negligence (Count III)*: Armitage alleges the Defendants wrongfully sought an illegal default judgment against her, wrongfully alleged an illegal obligation, and wrongfully attempted to induce her to pay that debt. She also alleges the Defendants failed to convey the Property back to her, to quiet title in her name, and to care for the property. (Doc. 1-2 at 8).

4. *Violation of the Consumer Protection Act (Count IV):* Armitage alleges that because the 2010 sale was invalid, Bank of America's requests for accumulated costs, fees, interest, principal, and other charges, constituted demands for debts Armitage did not owe and constitute unfair and deceptive debt collection practices. (Doc. 32-5 at 15).

5. *Constructive Fraud (Count V):* Armitage alleges that the Defendants committed constructive fraud by concealing and misrepresenting facts in obtaining a wrongful default judgment, specifically by representing that they had a proper basis for serving her by publication and alleging

6

she had an interest in the Property. (*See* Doc. 1-2 at 9; Doc. 32-5 at 15).

6. *Negligent Misrepresentation (Count VI):* Armitage alleges that Defendants failed to use competence or reasonable care throughout the process in light of the illegal default judgment and assignments. (Doc. 1-2 at 9).

7. *Deceit under § 27-1-712, MCA (Count VII):* Armitage alleges the Defendants willfully deceived her when obtaining the default judgment and executing the subsequent property sale. (Doc. 1-2 at 10).

8. *Equitable Relief Pursuant to § 30-14-133, MCA (Count VIII):* Armitage alleges that because the default judgment and the assignments were illegal, title should be quieted in her name, defendants have no lien or security interest in the Property, she owes no debt, and Defendants should be ordered to cease their debt collection against her. (Doc. 1-2 at 10).

9. *Relief from Judgment (Count IX):* Armitage alleges that because the default judgment was illegal, she should be granted relief from the default judgment in DV 12-26. (Doc. 1-2 at 10).

10. *Violation of 47 U.S.C. § 227 ("TCPA") (Count X):* Armitage has withdrawn this claim. (Doc. 46 at ¶ 17; Doc. 49 at 7).

Armitage seeks to recover compensatory and punitive damages, as well as her costs and attorney's fees. (Doc. 1-2 at 11-12). Additionally, she seeks quiet title and relief from her debt. (*Id.* at 11). Defendants argue that Armitage's claims should be dismissed because all of her allegations are premised upon the wrong

7

assumption that the default judgment and the assignments are illegal. The parties have filed cross motions for summary judgment on all claims.

## II. Standard of review

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Summary judgment is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). There must be a genuine dispute as to any material fact, which is a fact "that may affect the outcome of the case." *Id.* at 248.

When cross-motions for summary judgment are filed, the court must evaluate each motion separately, giving the non-moving party in each instance the benefit of all reasonable inferences. *ACLU v. City of Las Vegas,* 333 F.3d 1092, 1097 (9th Cir. 2003), *cert. denied* 540 U.S. 1110 (2004). The filing of cross-motions for summary judgment, where both parties argue there are no material

factual disputes, does not diminish the court's responsibility to determine whether disputes as to material facts are present. *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

## III. Discussion

Defendants Caliber, LSF9, Bank of America and First American Title Company have moved for summary judgment on all claims in Armitage's First Amended Complaint. (Docs. 22, 30). In her combined response, Armitage disputes only two "facts" which she argues entitle her to summary judgment and preclude summary judgment in favor of Defendants. (Doc. 44 at 2). Specifically, Armitage argues that (1) the default judgment Bank of America obtained against her on October 12, 2012, is void because she was never personally served, so all subsequent attempts to collect debt from her are wrongful; and (2) all the assignments of the trust indenture since Countrywide's assignment are void because none of the subsequent assignments are executed by Countrywide. (*Id.*).

After reviewing her Amended Complaint, the Court agrees with Defendants that all of Armitage's claims are contingent on the legality of the default judgment and the assignments. That is, assuming personal jurisdiction existed for the default judgment, and the assignments were legal, Armitage's claims fail. Additionally, although Armitage characterizes them as facts, these are legal determinations which must be found in her favor in order for the claims in her Amended

9

Complaint to survive. As explained below, the Court does not find the legal determinations in Armitage's favor, and thus, based on the undisputed facts, Defendants are entitled to summary judgment as a matter of law on all of Armitage's claims.

### A. The Default Judgment

Moving under Mont. R. Civ. Pro. 60(d), Armitage argues that the default judgment entered against her in Montana state district court is void because she was never personally served. (Doc. 44 at 2). Personal service is not required under Montana law when an individual has an interest in real property in Montana and cannot be found, however. *See* Mont. R. Civ. Pro. 4(o)(1)(A).[2]

Under Rule 4(o)(1)(A),

> A defendant who has not been served under the foregoing sections of Rule 4 can only be served by publication in the following situations:
>
> (A) when the subject of the action is real or personal property in Montana in which the defendant has or claims an actual or contingent lien or interest, or the relief demanded consists wholly or partially in excluding the defendant from any interest therein[.]

Armitage argues that Bank of America could not serve her by publication in 2012 because she did not have any actual or contingent lien or interest in the Property after the Trustee's sale on April 19, 2010. (Doc. 34 at 7). But Armitage's

---

[2] This rule was codified as Rule 4(D)(4)(a) at the time of Defendants' 2012 lawsuit.

10

attempt to end run around the rule by disclaiming her interest in the Property in 2012 to avoid summary judgment now is unavailing.

The purpose of the 2012 lawsuit was to reverse the foreclosure and re-instate the 2007 Deed of Trust and Note secured by the Deed of Trust on the Property, which, as a consequence, would reinstate Armitage's interest in the Property. (*See* Doc. 32-9 at 5-6). As a result of the default judgment, her ownership interest was recognized and fully restored in the Property records, with Bank of America's interest subordinate to hers. (*See* Doc. 25-1). In other words, in order for Bank of America to get the relief it sought, restoring Armitage's claim or interest in the Property was required.

Notably, the evidence also indicates that Armitage understood her interest was reinstated, because after she received notice of the default judgment, she resumed renting the Property for profit. (Doc. 46 at 6). Also of note, Armitage continues to pursue her interest in the Property, as evidenced by her allegations and request for relief in the Amended Complaint in this matter. (*See* Doc. 4 at ¶ 43, "Defendants wrongfully failed to convey the property back to plaintiff and failed to quiet title in the plaintiff[.]; ¶ 50, "The Plaintiff asks the Court award equitable relief including a declaration that title is quieted in her against all claims of the defendants[.]").

11

Because Armitage undisputedly had an interest in the Property at the time of the 2012 lawsuit, she was properly served by publication under Rule 4(D)(4)(a). The undisputed facts demonstrate that the default judgment against Armitage is not void for lack of proper service.

### B. Trust Assignments

Armitage's second argument is that all the assignments of the trust indenture since Countrywide was assigned are void because none of the subsequent assignments were executed by Countrywide. (Doc. 44 at 3-4). As Caliber points out, however, Armitage lacks standing to challenge these assignments because she was not, and is not, a party to any of the transactions. (Doc. 23 at 7).

Courts faced with similar complaints have repeatedly found that a homeowner does not have standing to claim that the individual signing the assignment lacked proper authority, or to raise other alleged deficiencies. *See Paatalo v. J.P. Morgan Chase Bank, N.A.*, 2012 WL 2505742, at * 7 (D. Mont. June 28, 2012) (concluding, "a borrower does not have standing to challenge assignments and agreements to which it is not a party); *see also Deshaw v. Mort. Elec. Registration Sys.*, Inc., 2014 WL 3420771, at *4 (D. Haw. July 10, 2014) (dismissing complaint pursuant to Rule 12(b)(1) because "Plaintiffs, not having been a party to the Assignment from one lender to another, lack standing to raise such a challenge"); *Livonia Props. Holdings v. 12840-12976 Farmington Road*

12

*Holdings, LLC*, 2010 WL 4275305, at *4-5 (6th Cir. 2010) ("[E]ven if there were a flaw in the assignment, [a homeowner] does not have standing to raise that flaw" because he is not a party to the assignment); *Gerlich v. Countrywide Home Loans, Inc.*, 2011 WL 3920235, at *2-3 (D. Minn. Sept. 7, 2011) (dismissing all the homeowner's claims because he did not have standing to dispute the mortgage assignment"). Armitage does not allege any material facts otherwise establishing that she has standing to dispute the assignment.

Even if she had standing, Armitage's claim still fails. Armitage executed the Deed of Trust, which identified MERS as "a separate corporation that is acting solely as a nominee for Lender and Lender's successor and assigns." (SUF ¶ 3). This is authorized under the STFA in Montana. *See Whipple*, 2014 WL 1404901 at *7) (MERS may exercise a lender's rights under a trust indenture, including assignments, as the nominee of the lender, cloaked with authority to act on the lender's behalf) (internal quotations omitted); *see also Ruby Valley Nat'l Bank v. Wells Fargo Delaware Trust Co., N.A.*, 317 P.3d 174 (Mont. 2014) (holding that present beneficiary of the trust indenture could be identified from the chain of assignments, starting with the assignment from MERS.) The Court finds that MERS was authorized to exercise Mann Mortgage's rights under the Deed of Trust, including assigning beneficial interest in the Deed of Trust, as Mann's agent. As a result, the assignments are valid.

## B. Because the default judgment and assignments are legal, Armitage's claims fail as a matter of law.

Each of Armitage's claims in Counts I-IX rely on the presumption that the default judgment was illegal and the assignments were invalid. (*See* Doc. 1-2; *see also* Doc. 44 at 2, "Armitage's claims against [Bank of America], Caliber and LSF9 are based on two key facts[,] . . . that [Bank of America's] default judgment [] is void because Armitage was never personally served, and [] that all assignments of the trust indenture after the assignment to Countrywide [] are void[.]"). Having found that the default judgment is legal and the assignments were valid, the Court determines that the undisputed facts entitle Defendants to summary judgment on all claims.

In a nutshell, the undisputed facts demonstrate that because the default judgment was legal, Bank of America's debt collection practices did not breach the Trust Indenture or the Small Tract Financing Act or the FDCPA or MCPA, (Counts I, II, III, IV), Bank of America did not commit fraud by misrepresenting facts regarding the default judgment, (Counts V, VI, VII), and because the assignments are valid, Armitage is not entitled to title quieted in her name or relief from debt (Count VIII) or relief from the default judgment. (Count IX).

## III. Conclusion

For the reasons set forth above, IT IS HEREBY ORDERED that Defendants' Motions for Summary Judgment (Docs. 22, 30) are GRANTED, and

14

Plaintiff's Motion for Partial Summary Judgment Vacating State Court Default Judgment (Doc. 34) is DENIED.

The Clerk of Court is directed to enter Judgment accordingly and to close this file.

DATED this 22nd day of January, 2017.

*Susan P. Watters*
SUSAN P. WATTERS
United States District Judge